UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
LOCAL 791, UNITED FOOD AND             \*
COMMERCIAL WORKERS UNION,              \*
AFL-CIO,                               \*
                                       \*
           Plaintiff,                  \*     Civil Action No. 05-10841-RCL
                                       \*
v.                                     \*
                                       \*
SHAW'S SUPERMARKETS, INC.,             \*
                                       \*
           Defendant.                  \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

While making several arguments in opposition to the Motion for Judgment on the Pleadings of Shaw's Supermarkets, Inc. ("Shaw's"), all of which are addressed below, one central theme runs through the memorandum of law of Plaintiff Local 791, United Food and Commercial Workers Union ("Local 791" or the "Union"). The Union's essential point, stated in different ways, is that the governing collective bargaining agreement between the Union and Shaw's ("CBA") doesn't explicitly recite that the Union can't file suit in court over the non-arbitrable violation of the Side Agreement; as a result, the Union claims, its suit must be allowed to proceed. The absence of specific language on this issue is, of course, true, but does not support the ultimate conclusion drawn by the Union. The terms of the CBA, when read as a whole, foreclose the Union's attempt to obtain a judicial remedy for a matter excluded from arbitration. Accordingly, Shaw's motion for judgment on the pleadings is appropriately granted.

A.    **Argument: There Is No Ambiguity In The CBA Between Shaw's And Local 791**.

Local 791 asserts that the CBA is ambiguous on whether the parties intended for a judicial action such as the present matter to go forward. The issue of whether a CBA is ambiguous is properly decided on a motion for judgment on the pleadings. When a court is called upon to interpret a collective bargaining agreement, its interpretation is a question of law. Quesnol v. Prudential Insurance Co., 66 F.3d 8, 11 (1st Cir. 1995) ("Whether [an employee] is subject to the CBA is in this case…a question of law, not of fact."). Accord, International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, U.A.W. v. Skinner Engine Co., 188 F.3d 130, 138 (3rd Cir. 1999) ("The interpretation of a collective bargaining agreement...is typically a question of law."). Similarly, whether or not a CBA is ambiguous is "a question of law." Central States Southeast and Southwest Areas Pension Fund v. Kroger Co., 73 F.3d 727, 732 (7th Cir. 1996).

Local 791 assumes that its CBA with Shaw's is ambiguous on whether it can seek judicial relief under 29 U.S.C. §185, because the CBA does not explicitly prohibit a court action. However, as noted in Shaw's underlying memorandum, the CBA between Local 791 and Shaw's makes clear that the "procedures" set forth in Article 13 of the CBA "are intended to be the sole means for the resolution of grievances, which for the purposes of this Agreement are defined as disputes between the Management and the Union or covered Employee(s) concerning the meaning or application of this Agreement." (emphasis added). For the specific grievance at issue -- the alleged violation of the 1985 Side Agreements -- "the sole means for the resolution" lies in the three (3) step grievance procedure.

The only response of Local 791 to this language is to note, without argument, that the CBA provides that if a grievance is "not settled at Step 3, the matter may be applied to

2

arbitration in strict accordance with the procedures for arbitration provided elsewhere in" the CBA.  (See Local 791's Memorandum at 4).  As is evident, the 1985 Side Agreements prohibit the present dispute from being "appealed to arbitration."  Nonetheless, the CBA provided for three (3) levels of review for grievances, progressing from review by the Shaw's Store Manager, to the Regional management representative, and finally to Shaw's Labor Relations representative.  (See CBA, Article 13, Section 1).  Local 791, then, did have a remedy for the alleged contract violation.  To allow Local 791 to seek relief in this Court would mean that Article 13 is not "the sole means for the resolution of" the present grievance, but rather that a de novo judicial remedy, never mentioned in the CBA, is also a "means of resolution."  This Court should not reach a result contrary to the CBA's plain meaning.

The Union further contends that the case law supports its interpretation, but the case law to which it cites bears no resemblance to this matter.  The citation to Smith v. Evening News Association, 371 U.S. 195 (1962) is inapposite.  That action proceeded to court under Section 301, and ultimately reached the U.S. Supreme Court, where "[t]here was no grievance arbitration procedure in th[e] contract which had to be exhausted before recourse could be had to the courts."  See Smith v. Evening News Association, 371 U.S. at 196 n.1.  By contrast, the CBA between Local 791 and Shaw's has such a procedure, which is the "sole means" of resolving grievances.

Next, Local 791 argues at length that Shaw's position is somehow undermined by its not arguing in a preliminary injunction proceeding in the U.S. District Court in Rhode Island in 2001 that the Court lacked jurisdiction over a dispute not subject to the grievance or arbitration provisions of the CBA.  The Union cannot argue that Shaw's "failure" to raise this issue in an unrelated preliminary injunction proceeding (which quickly ended in Shaw's favor

3

with the denial of the requested injunction) has *any* legal effect or otherwise constitutes either an estoppel or waiver of its present position.  Indeed, over the course of the long relationship between Shaw's and Local 791 it would be very surprising -- as well as highly irrelevant -- if the parties' positions in every forum in which they have clashed were always congruent.

Moreover, any inconsistency in the positions taken by Shaw's in the two (2) actions is grossly overstated.  The health insurance provisions at issue in the Rhode Island litigation -- Article 10, Section 7 -- provide (with exceptions not pertinent hereto) that "[n]either the provisions of this Article nor any questions as to the application or interpretation of any of said programs may be made the subject of a grievance or be arbitrable…" (emphasis added).  By contrast, the 1985 Side Agreements do not refer to the exclusion of any matter from the grievance process, only arbitration.  It is apparent that the parties knew how, if they wished, to exclude matters from both grievance and arbitration.  Their failure to do so for the 1985 Side Agreements establishes that, for the class of grievances identified therein, the grievance procedure remains the "sole means for the resolution of grievances," as provided for in Article 13 of the CBA, and that the final say on disputes over the Side Agreements rested with Shaw's at Step 3 of the grievance procedure.  See Young v. Southwestern Bell Telephone Co., 304 F.Supp. 475, 478 (E.D. Ark. 1969), aff'd, 424 F.2d 256 (8th Cir. 1970) (per curiam), previously cited by Shaw's, in which employees with less than three (3) years of service could utilize the first two steps of the grievance procedure, but could not proceed to arbitration; "the Court concludes that the fact that the contract before it gives to older employees a right to arbitration while not giving such a right to newer employees indicates that the defendant has reserved the ultimate right to discharge employees with less than three years service in the exercise of managerial discretion after granting them hearings at two levels of personnel administration."

The other arguments contentions advanced by the Union should not dissuade this Court from allowing Shaw's motion. At issue in <u>Local 369, Utility Workers Union of America v. Boston Edison Co.</u>, 588 F. Supp. 800 (D. Mass.), <u>aff'd</u>, 752 F.2d 1 (1st Cir. 1984), was whether an arbitrator's decision that a grievance was not arbitrable should be reversed because it failed to draw its essence from the underlying agreement. Both the District Court and Court of Appeals held that the arbitrator's decision did not draw its essence from the agreement, and remanded the matter for arbitration; the court was not called upon to decide, and never did decide, whether the union could have proceeded with a judicial action if the grievance was deemed non-arbitrable. The present matter is quite different, since both parties agree that arbitrability is not at issue.

In addition, Local 791 submits an affidavit presenting its version of the negotiations leading to the exclusion of the 1985 Side Agreements from arbitration. The affidavit should not be considered. Courts consider evidence extrinsic to a collective bargaining agreement only when the contract is ambiguous. <u>Casey v. Lifespan Corp</u>., 62 F.Supp.2d 471, 480 (D. R.I. 1999); <u>Coffin v. Bowater, Inc</u>., 385 F.Supp.2d 38, 59 (D. Me. 2005). See <u>American Postal Workers Union v. U.S. Postal Service</u>, 940 F.2d 704, 707-708 (D.C. Cir. 1991) ("In the absence of ambiguity in the collective bargaining agreement, however, we have not cause to examine extrinsic evidence of the parties' intent."). For the reasons discuss above, there is no ambiguity in the CBA over the availability of judicial relief, making resort to affidavits or other extrinsic evidence inappropriate.[1]

Even if this Court considers the affidavit, it does not support Local 791's position. The affidavit at most establishes that when Shaw's and Local 791 agreed to exclude the present dispute from arbitration, the parties did not discuss the effect of the exclusion on a judicial action

---

[1]In conjunction with filing this reply Shaw's is filing a motion to strike the affidavit.

5

such as that brought by Local 791.  (See Affidavit of Mary McClay, pars. 5, 6, 8, 9).  The Union's subjective (and self-serving) beliefs about the effect of the exclusion are irrelevant to whether an action under Section 301 can be brought in the present circumstances.

Finally, the Union never addresses the serious labor law policy implications of allowing this case to proceed.  As noted in Shaw's underlying memorandum, courts "should view with suspicion an attempt to persuade it to become entangled in the substantive provisions of a labor agreement, even through the backdoor of interpreting the arbitration clause, when the alternative is to use the services of an arbitrator."  United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 585 (1960) (quoted in Mobil Oil Corp. v. Local 8-766, Oil, Chemical & Atomic Workers International Union, 600 F.2d 322, 328 (1st Cir. 1979)).  The Union's efforts to have this Court review de novo a grievance will only serve to "entangle[]" this Court in the minutiae of a collective bargaining agreement over a dispute over an hourly premium of $0.75, which the parties agreed to exclude from the usual mode of neutral decision-making through an arbitrator.

**B**.    **Conclusion**

For all the above reasons, and the reasons set forth in Shaw's underlying memorandum of law, Shaw's motion for judgment on the pleadings should be granted, and the Union's suit dismissed, with prejudice.

        Respectfully submitted,

        SHAW'S SUPERMARKETS, INC.,

        By its Attorneys,

        MORGAN, BROWN & JOY, LLP  
        200 State Street, 11th Floor  
        Boston, MA 02109-2605  
        (617) 523-6666

        By:   /s/Robert P. Morris  
                Robert P. Joy  
                B.B.O. #254820  
                Robert P. Morris  
                B.B.O. #546052

Dated:  March 7, 2006

## CERTIFICATE OF SERVICE

      I, Robert P. Morris, hereby certify that on March 7, 2006, this document filed electronically through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to any persons indicated as non-registered participants.

        /s/Robert P. Morris  
        Robert P. Morris