UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____<br>)<br>LOCAL 791, UNITED FOOD AND )<br>COMMERCIAL WORKERS UNION, )<br>AFL-CIO, )<br>  )<br>            Plaintiff,      )<br>  )<br>    v.       )<br>  )<br>SHAW'S SUPERMARKETS, INC., )<br>  )<br>            Defendant.    )<br>_____) | CIVIL ACTION NO.<br>05-10841-RCL |

### ORDER ON DEFENDANT'S MOTION FOR
### JUDGMENT ON THE PLEADINGS

LINDSAY, District Judge.

Before me is a motion by the defendant, Shaw's Supermarkets ("Shaw's") for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and 12(b)(1). The case was brought by a labor organization, Local 791, United Food and Commercial Workers Union, AFL-CIO ("Local 791"), pursuant to section 301 of the Labor Management Relations Act ("LMRA"). The defendant argues that this court does not have jurisdiction over the dispute because the collective bargaining agreement prescribes the exclusive remedy for disputes arising under the agreement in the form of grievance and arbitration procedures. For the reasons stated herein, I GRANT the motion for judgment on the pleadings and enter judgment for the defendant.

Shaw's and Local 791 are parties to a collective bargaining agreement covering employees

of thirty-nine stores in southeastern Massachusetts and Rhode Island for the period August 1, 2004 through August 2, 2008 ("CBA"). (Compl. ¶ 4.)[1]  The CBA consists of 25 articles, as well as a series of side letters and agreements.  The dispute in this case concerns one provision of the 1985 Side Agreements.  The paragraph immediately preceding the 1985 Side Agreements states: "The following 1985 and 1991 understandings are hereby continued but shall not be subject to arbitration." (CBA, Ex. 1 to Def. Mem., at 74.)

The CBA sets out a detailed procedure for grievance and arbitration.  Article 13 of the CBA has two parts: the first part is entitled "Grievance and Arbitration Procedure," and the second part is entitled "Arbitration Procedures."  Article 13 provides that "[t]he following procedures are intended to be the sole means for the resolution of grievances, which for the purposes of this Agreement are defined as disputes between the Management and the Union or covered Employee(s) concerning the meaning or application of this Agreement." (CBA, Art. 13, Grievance and Arbitration Procedure § 1.)  Article 13 sets out a four-step procedure for grievances: the fourth and final step is arbitration. (CBA, Art. 13, Arbitration Procedures § 1.)  If a grievance is submitted to arbitration, and a decision is made within the authority of the arbitrator, "[t]he arbitrator's decision will be final and binding on all parties" and there is no judicial review. (CBA, Art. 13, Arbitration Procedures § 4.)

Although both parties agree that the CBA bars arbitration of the alleged violation of the 1985 Side Agreements at issue in this case, they disagree about the implications of that bar.  The defendant argues that the plaintiff is limited to the grievance procedure, but has no remedy beyond

---

[1] The defendant assumes the allegations of the complaint to be true for purposes of this motion only. (Def. Mem. 2.)

the third step of that procedure. The plaintiff argues that in the absence of arbitration, it is entitled to judicial review. In the alternative, the plaintiff argues that the provision barring arbitration is ambiguous and the question of its meaning should be submitted to a finder of fact.

Judicial review is available to resolve disputes under collective bargaining agreements "[i]n the absence of an agreement for arbitration or some other form of final resolution of a dispute." *Local 369, Utility Workers Union of America, AFL-CIO v. Boston Edison Co.*, 588 F. Supp. 800, 804 (D. Mass. 1984), *aff'd* 752 F.2d 1 (1st Cir. 1984). In this case, there is an established grievance procedure to resolve the dispute. The grievance and arbitration procedures described in Article 13 "are intended to be the sole means for the resolution of grievances." The plain language of the paragraph preceding the 1985 Side Agreements provides that a dispute over any provision of the Side Agreements shall not be subject to *arbitration*; it says nothing about the grievance procedure. The simplest interpretation of these words is that disputes over the provisions of the Side Agreements may be grieved, but may not proceed to the fourth and final step of arbitration. The substance of the 1985 Side Agreements supports this interpretation. The Side Agreements are physically set apart from the main text of the CBA; they are less formalized than the main text, and include nine provisions requiring the defendant to be "sensitive" to certain needs of its employees. As the defendant points out, these provisions "are particularly ill-suited to arbitration." (Def. Mem. 10.) There is no indication in the text of the statement that disputes regarding the Side Agreements would skip the grievance procedure and proceed to court; and there is no explanation for why disputes under the Side Agreements would be entitled to judicial

3

review, when disputes under the remainder of the CBA may *not* be appealed to a court.[2] *See* CBA, Art. 13, Arbitration Procedures § 4 ("The arbitrator's decision will be final and binding on all parties provided the decision is made within the authority delegated to the arbitrator by the parties.").

I find that the paragraph preceding the 1985 Side Agreements is unambiguous and limits the plaintiff to the first three steps of the grievance procedure to contest the alleged violation. This court does not have jurisdiction over the dispute pursuant to section 301 of the LMRA. Therefore I GRANT the defendant's motion for judgment on the pleadings and enter judgment for the defendant.[3]

SO ORDERED.

                                      /s/ Reginald C. Lindsay
                                      United States District Judge

DATED:  August 30, 2006

---

[2] The plaintiff points to another provision of the CBA that is excluded from the grievance and arbitration procedure. Article 10 of the CBA, which is entitled "Insurance-Pension," provides: "[n]either the provisions of this Article nor any question as to the application or interpretation of any of said programs may be made the subject of a grievance or be arbitrable under this Agreement except disputes concerning determination of employer contribution rates to the Trust which shall be subject to expedited arbitration." (Pl. Mem. 4., citing CBA, Art. 10 § 7.) The plaintiff claims that the Union previously brought an action in federal court based on a provision of Article 10, and the defendant never moved to dismiss the complaint for lack of jurisdiction. (Pl. Mem. 8, citing *UFCW, Local 791 v. Shaw's Supermarkets, Inc.*, Civ. Action No. 1:00-cv-00110-L (D.R.I.).)  I do not believe this argument is helpful to the plaintiff. Article 10, section 7 is distinguishable from the paragraph preceding the 1985 Side Agreements because it explicitly states that grievances under Article 10 are excluded from the grievance procedure *and* arbitration. This suggests that the 1985 Side Agreements, which are excluded from arbitration, may still be grieved.

[3] The defendant also moved to strike the Affidavit of Mary McClay. I did not consider the affidavit in my analysis of the motion for judgment on the pleadings. In light of my decision on the motion for judgment on the pleadings, the motion to strike is moot.